UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICKY GILLETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12-CV-1031 (CEJ) |
| ) | |
| PATRICK R. DONAHOE, Postmaster ) | |
| General, U.S. Postal Service, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed a response and the issues are fully briefed.

Plaintiff Ricky Gillette alleges that his employer, the United States Postal Service (USPS), discriminated against him on the basis of his disability. He brings this action under the Rehabilitation Act of 1973, 29 U.S.C. § 791.[1]

## I.  Background

Plaintiff was born with cerebral palsy and scoliosis and, as a result, his right leg is shorter and weaker than his left leg. In 1998, he was hired as a city letter carrier. At that time, he was able to perform his duties as a letter carrier without using any assistive device.

In 2006, plaintiff suffered serious injury to his left leg in a car accident and was confined to a wheelchair for six months. He returned to work on light duty four

---

[1]Plaintiff also alleged that he was denied reasonable accommodation in violation of the Act. That claim was dismissed pursuant to Fed.R.Civ.P.12(b)(6) because plaintiff did not allege that he requested accommodation. [Doc. #17].

months after the accident. Def. Ex. 1, Pl. Dep. at p. 90; see also id. at p. 61 ("I had passed a medical opinion after the accident . . ."). Once he started walking again, plaintiff used a quad-cane.² Id. at p. 52. His postmaster at the time, Ruth Interkopher, was aware that plaintiff used a cane when delivering mail. Id. at p. 92. Indeed, it was widely known that plaintiff used a cane. See Def. Ex. 9, Linda Hinds Dep. at pp. 24-26 (she first became aware of plaintiff in November 2006; in the time she knew him he always used a cane). In 2008, plaintiff was slightly injured when he slipped on a wet surface as he was getting out of his postal vehicle. Def. Ex. 1, Pl. Dep. at pp. 151-52. He received two or three days of worker's compensation following this incident. Id. at p. 153. It is undisputed that this was the only instance in which plaintiff had an accident or injury while using the cane. In March or April 2010, plaintiff stopped using the cane altogether. Id. at p. 15.

In July or August 2009, plaintiff was assigned to the St. Charles distribution center. Id. at p. 93. In August 2009, manager Linda Hinds completed an inspection of plaintiff on his delivery route, at the request of the officer in charge, James Maher.³ Id. at p. 172; Def. Ex. 9, Linda Hinds Dep. at p. 35. Ms. Hinds noted in her inspection report that plaintiff used a cane while working his route. Id. at 66; but see id. at p. 63 (Hinds believed that plaintiff was able to carry out his duties) and p. 67 (Hinds did not believe the cane interfered with plaintiff's ability to deliver mail). Although Maher had previously encountered plaintiff, he testified that he was not aware that plaintiff used

---

²Plaintiff testified that he gained more than 100 pounds following the accident. He needed a cane because his left leg was still healing and his right leg was not strong enough to cope with the extra weight. By the time of his deposition he had lost much of the additional weight and no longer used a cane. Id. at p. 56, 60.

³Maher had recently been assigned to the distribution center. Christine Ann Bartholf Dep. at p. 14.

a cane while delivering mail until he read the inspection report.[4]  Def. Ex. 2, James Maher Dep. at pp. 30-31.

Maher called Christine Bartholf, a labor relations specialist in charge of reasonable accommodations for USPS.  He told her that an unidentified letter carrier under his supervision was using a cane.  He stated that he did not believe the carrier could safely perform his job and should be put "off the clock" or "on emergency placement" and sent home.  Def. Ex. 3, Christine Bartholf Dep. at pp. 10, 12; Def. Ex. 11, Mark Ott Dep. at p. 29.  Ms. Bartholf told Maher that the carrier could not be sent home on emergency placement because he had not had an injury as a result of using the cane.  Bartholf Dep. at pp. 12-13 (emergency placement not appropriate where an employee was not at risk of immediate harm).  She instructed Maher to ask the employee to provide medical documentation that he needed to use a cane so that it could be determined whether he needed an accommodation to perform his job.  In the interval, she stated, the employee should request assignment to light duty so that he could continue to receive his full pay.[5]  Id. at pp. 15-16.  A request for light duty allows a postal work to do other available tasks within his union craft.  Bowdern Dep. at pp. 74-75; see also Maher Dep. at p. 90 ("Light duty is a tool that the post office uses to provide work for employees that are unable to do their jobs on their normal bid assignments for a temporary period.")  Ms. Bartholf was not aware that the carrier

---

[4]Plaintiff disputes Maher's testimony on this point: plaintiff testified that Maher saw him everyday, wearing the uniform of a letter carrier and using the cane or a cart for support.  Pl. Dep. at 229, 233.

[5]Under the terms of the union contract, management could not simply assign an employee to light duty.  Rather, the assignment had to be requested by the employee and supported by medical documentation.  Def. Ex. 11, Mark Ott Dep. at 42.

under discussion had been using a cane for years. See Bartholf Dep. at p. 18. She was aware of other letter carriers who used canes. Id. at p. 19.

Plaintiff and his union president, Richard Bowdern, met with Maher in September 2009.[6] Pl. Dep. at pp. 199-200. Maher stated that he did not think plaintiff could safely perform his job duties while using a cane and asked plaintiff to request assignment to light duty. Plaintiff refused, thinking that Maher would use a request for light duty to remove him from his route as a first step toward dismissal. Pl. Dep. at pp. 208, 213-14; 268 ("I believe the postal service higher management told them to eliminate people on payrolls."); see also Bowdern Dep. at p. 146 ("[I]n my opinion, [Maher] was trying to get Ricky Gillette out of the carrier craft.") But see Bartholf Dep. at p. 24 (plaintiff was mistaken in his belief that he could be dismissed for requesting light duty). Maher also asked plaintiff to provide medical records, which plaintiff refused to do. Defendant asserts that Maher requested medical documents to support plaintiff's need to use a cane; plaintiff asserts that Maher requested the documents to support a request for light duty. See Bowdern Dep. at p. 14 ("[H]e's not requesting light duty so why would he go get the medical documentation to support a light duty request?") Finally, Maher suggested that plaintiff seek disability retirement. Maher Dep. at p. 37; Pl. Dep. at pp. 203-06 (Maher wrote a name and telephone number on scrap paper taken from trash can and told plaintiff to "call this man to file for disability retirement").

---

[6]Bowdern testified that this was the second time he and plaintiff met with Maher. The first meeting occurred in July or August shortly after plaintiff was assigned to the distribution center. Bowdern Dep. at p. 79. There were reports that plaintiff was taking too long to complete his deliveries, which plaintiff testified was typical for carriers learning a new route. Pl. Dep. at p. 93. By the time of the second meeting, plaintiff had learned his route and was performing satisfactorily. Bowdern Dep. at p. 81.

Maher acknowledged at deposition that, at the time he took these actions, he was not aware of any accidents resulting from plaintiff's disability or his use of a cane. Maher Dep. at p. 9. Indeed, the fact that plaintiff had been delivering mail using a cane for three years was "not relevant to [his] concerns." Id.

On September 18, 2009, Maher placed plaintiff on restricted duty. His letter to plaintiff states, in relevant part:

> As we've discussed I have serious concerns regarding your ability to perform your job safely. I've spoken to the . . . Health Nurse Administrator regarding the difficulty you have moving about the office, the need to use a U-Cart for support in the office, and a four-legged cane to deliver your route. She has advised that this is a hazard to yourself and others. I concur with her professional opinion.
>
> I have attempted to provide you light duty work until your limitations can be ascertained. My understanding is you do not wish to request light duty, nor do you wish to provide any medical documentation regarding your inability to walk without a cane.
>
> Until this matter is resolved, you will not be allowed to perform street duties that necessitate your walking. We will permit you to perform as much of you duties as possible a long as there is not an unreasonable burden on the Postal Service. However, since you refuse to request light duty, under Article 41, I cannot have you working other assignments.
>
> * * *
>
> You are hereby instructed to provide medical documentation regarding your ability to walk to meet the requirements of the position. . . Any failure to follow these instructions within 10 days will be dealt with administratively.

Deft. Ex. 3.

As a result of being placed on restricted duty, plaintiff was only allowed to "case his route," or sort his mail for delivery by another carrier. Plaintiff testified that he went from working 40 hours plus 10 overtime hours per week to approximately 2 hours a day. Pl. Dep. at p. 275. The reduction in his wages was a hardship, and his family had to refinance their home mortgage and sign up for food pantries.

Bowdern filed a grievance on plaintiff's behalf. Bowdern Dep. at p. 19. Plaintiff underwent a fitness-for-duty examination on October 20, 2009. On December 10, 2009, Maher was notified that plaintiff could perform his duties as a letter carrier. It was recommended that he use his cane for stability when walking, avoid carrying more than 20 pounds, and perform indoor duties during icy or snowy conditions. Deft. Ex. 14. On December 26, plaintiff returned to his normal duties without any restrictions, including those recommended in the fitness-for-duty examination. Pl. Dep. at p. 274. His union grievance was resolved with the restoration of his back pay and leave. Deft. Ex. 15; Pl. Dep. at p. 274. Plaintiff was not reimbursed for overtime pay that he would have earned. Id. at p. 273 ("Jim Maher stated that if I wanted overtime, to take him to court.")

Additional facts will included in the discussion below as necessary to address the issues.

II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

Plaintiff claims that defendant subjected him to disparate treatment in violation of the Rehabilitation Act. The Act provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). To make out a claim, plaintiff needs to show he was "disabled," was "otherwise qualified," and was the victim of "discrimination" "solely" because of his disability. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004).

#### A. Direct Evidence of Discriminatory Animus

Plaintiff argues that he has "direct evidence" of discrimination. "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." King v. United States, 553 F.3d 1156, 1160 (8th Cir. 2009) (citation omitted).

> Direct evidence "refers to the causal strength of the proof," Richardson v. Sugg, 448 F.3d 1046, 1058 (8th Cir. 2006), meaning such evidence

> "must be strong enough to show a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision," Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006) (alteration in original) (internal quotation omitted). This category of proof "includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." Id. at 966 (quoting Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993)).

Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042-43 (8th Cir. 2007). "[S]tray remarks in the workplace, statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." King, 553 F.3d at 1160 (internal quotations and citations omitted).

Plaintiff cites Maher's suggestion that he apply for disability retirement as direct evidence of discriminatory intent. Defendant argues that, as a category, suggestions to seek retirement are insufficient to show discriminatory intent and that plaintiff must adduce additional evidence of discriminatory animus. Defendant cites two cases to support its argument. In Hinton v. City College of New York, 05 CIV. 8951 GEL, 2008 WL 591802 (S.D.N.Y. Feb. 29, 2008), the supervisor offered to support the plaintiff in seeking retirement after she complained that her medical condition was "demanding and difficult and overwhelming for her on a daily basis." Id. at *23 (noting that, if the supervisor failed to respond to plaintiff's complaint, he could have been accused of refusing to accommodate her medical needs). In Wiemann v. Indianola Community School Dist., 278 F. Supp. 2d 968, 975 (S.D. Iowa 2003), plaintiff's supervisor suggested that the plaintiff seek retirement after he stated he felt unable to teach the courses he was assigned. Several months later, plaintiff was disciplined for multiple instances of "documented improper conduct," including using sick leave to work at

another job. Weimann, 278 F. Supp. 2d at 975. The plaintiff left his job and claimed he was constructively discharged. The court summarily rejected plaintiff's argument that his supervisor's retirement suggestion, without more, constituted direct evidence of discriminatory animus. Id.

In this case, there is no evidence that plaintiff, or anyone else, complained that his disability impeded his ability to perform the requirements of his job and, thus, Hinton and Weimann are distinguishable. In the absence of any such complaints, Maher's statement that plaintiff should consider disability retirement plainly shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007) (quotation and citation omitted). A reasonable fact-finder could conclude from his statement that Maher was motivated by improper discriminatory animus when he challenged plaintiff's ability to deliver mail while using a cane.[7]

### B. Maher's Role

Defendant also argues that plaintiff's claim fails because Maher was merely carrying out Ms. Bartholf's instructions when he stopped plaintiff from delivering the mail. Defendant's argument misses the point: Maher required plaintiff to prove that it was safe for him to continue doing the job that he had been doing for a period of years. Defendant asserts that Maher was motivated solely by his concern for the

---

[7]Even if a jury finds "direct" evidence of discrimination, an employer can avoid liability by showing that it would have made the same decision without discrimination. Gonnerman v. McHan Const., Inc., 520 F. Supp. 2d 1095, 1106 (N.D. Iowa 2007) (citing Wheeler v. Missouri Highway & Transp. Comm'n, 348 F.3d 744, 750 (8th Cir. 2003)).

safety of plaintiff and the public. However, Maher testified that he was not aware of any damage, accidents or injuries caused by plaintiff's condition or use of a cane when he made his demand. A generalized concern for safety, without more, is not sufficient justification to impose additional requirements on an individual with a disability.

> To protect disabled individuals from discrimination "based on prejudice, stereotypes, or unfounded fear," School Bd. of Nassau County v. Arline, 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), "an individualized assessment of the [employee's] present ability to safely perform the essential functions of the job based on medical or other objective evidence" is required, Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 569, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (citing 29 C.F.R. § 1630.2(r) and Bragdon v. Abbott, 524 U.S. 624, 649, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (citing Arline, 480 U.S. at 288, 107 S.Ct. 1123)).

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 220 (2d Cir. 2001). In the absence of any evidence that safety was a genuine concern, a reasonable factfinder could conclude that Maher's conduct was based solely on a discriminatory assumption that a letter carrier with a cane could not safely perform his job.

* * * *

For the reasons stated above, the Court concludes that defendant has failed to show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #38] is **denied**.

This matter will be set for trial by separate order.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of April, 2014.